**2009-55524 / Court: 129**

CAUSE NO. _____

Filed 09 August 26 P2:58
Loren Jackson - District Clerk
Harris County
ED101J015498611
By: Furshilia Brantley

| | | |
|---|---|---|
| LeTOURNEAU TECHNOLOGIES, INC. and ROWAN COMPANIES, INC. | § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| vs. | § § | _____ JUDICIAL DISTRICT |
| THE HARTFORD CASUALTY INSURANCE COMPANY, | § § § | |
| Defendant | § § | HARRIS COUNTY, TEXAS |

## LeTOURNEAU TECHNOLOGIES, INC.'S ORIGINAL PETITION

LeTourneau Technologies, Inc. ("LTI") and Rowan Companies, Inc. ("RCI") corporations organized and existing under the laws of the state of Texas, file their Original Petition against The Hartford Casualty Insurance Company ("The Hartford") and, in support thereof would respectfully show this Court as follows:

### I.    PARTIES

1.    Petitioner LTI is a Texas corporation with its principal place of business at 6410 W. Sam Houston Pkwy, Houston, Texas 77041. Petitioner Rowan is a Delaware corporation with its principal place of business at 2800 Post Oak Boulevard, Suite 5450, Houston, Texas 77056.

2.    The Hartford is a company organized and existing under the laws of the State of Delaware. Defendant regularly conducts business in the State of Texas. Defendant may be served by certified mail, return receipt requested through the Texas Secretary of State, 701 Brazos St., Suite 1050, Austin, Texas 78701.

Certified Document Number: 43178041 - Page 1 of 5

**EXHIBIT**
**"A"**

## II.    JURISDICTION AND VENUE

3.    This Court has jurisdiction over this case because the case involves breach of contract that was entered into in the State of Texas and the breach of that contract by Defendant which regularly conducts business in Texas.

4.    This Court has personal jurisdiction over Defendant because Defendant regularly conducts business in Texas.

5.    Removal of this matter to the United States District Court is inappropriate because no federal question is raised by this claim and this suit is between non-diverse parties who are corporate citizens of the State of Delaware.

6.    Venue is proper in Harris County under TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1) because it is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

## III.    DISCOVERY CONTROL PLAN

7.    Discovery in this case is intended to be conducted under the Level 2 Discovery control Plan, as described the Texas Rule of Civil Procedure 190.4.

## IV.    FACTUAL BACKGROUND

8.    In April 2006, LTI hired Joseph Kippes ("Kippes") to work in its Houston, Texas facility located at 6401 West Sam Houston Parkway. In the fall of 2006, Kippes was moved to a night shift supervisor position and was an on-call backup. In his capacity as a night shift supervisor, Kippes was responsible for supervising the issuance of raw materials to production, including copper tubing.

Certified Document Number: 43178041 - Page 2 of 5

2

9.      In the first quarter of 2007, the LTI warehouse manager identified 6,900 pounds of missing copper. The manager began reviewing production and receiving records to determine the cause of the loss. The copper was not located and $88,752 was written off to account for the loss.

10.     A regular cycle count was then conducted in August 2007 and revealed an additional 26,000 pounds in missing copper at a cost of $340,000. Based on this finding, warehouse management concluded that the copper was stolen and initiated an investigation.

11.     Several area scrap metal recycling businesses were contacted to determine if any of their customers were LTI employees. C&D Scrap Metal Recyclers confirmed that Joseph Kippes sold approximately 18,000 pounds of copper to C&D, for which Kippes received $39,080.

12.     Following this investigation, Kippes was arrested on October 29, 2007 and was officially terminated from LTI effective October 30, 2007. On September 25, 2008 he was indicted for theft.

13.     The total financial loss sustained by RCI and LTI in connection with Kippes's theft was $447,547.17.

14.     RCI is insured by The Hartford ("Hartford") under a "Crime Shield Policy". The policy number is 83BDDDK4609 and was in effect from May 19, 2005 through and including the date of the loss at issue here. LTI is a wholly owned subsidiary of RCI and is an additional named insured on said policy. A true and correct copy of the policy is attached as Exhibit A. Under the "Crime Shield Policy", Hartford expressly agrees to pay for loss of or damage to money, securities, and other property which results directly from theft by an employee, whether

3

or not identifiable, while acting alone or in collusion with other persons. *See. Ex. A* at pg. 2. The deductible under the policy is $250,000 and the coverage limit is $2,500,000. *Id.* at 1.

15.    RCI and LTI submitted proof of the loss incurred as a result of Kippes's theft to Hartford in August 2008. LTI and RCI have submitted all necessary notices.

16.    As of this filing, Hartford has failed to reimburse RCI and LTI under the Crime Shield Policy for the loss they sustained as a result of Kippes's theft.

## V.    BREACH OF CONTRACT

17.    RCI and LTI incorporate the factual allegations contained in Paragraphs 1 through 14 above.

18.    RCI and LTI's insurance policy with Hartford constitutes a valid, enforceable contract. RCI and LTI have performed their obligations under the policy by providing proof of the loss they incurred in connection with Kippes's theft. The Hartford has breached the contract by failing to reimburse RCI and LTI for their losses arising from the theft as required by the terms of Hartford's Crime Shield Policy.

19.    RCI and LTI have suffered financial injury as a result of The Hartford's breach in the amount of $447,547.17.

## VI.    DAMAGES

20.    RCI and LTI seek recovery of economic damages for Hartford's breach in the amount of $447,547.17. RCI and LTI are also entitled to recover and seek to recover reasonable attorneys' fees and expenses incurred in prosecuting this action.

4

Certified Document Number: 43178041 - Page 4 of 5

## VII. JURY DEMAND

21.    RCI and LTI request a jury trial as is their right under the Texas and United States Constitution and has paid the required fee.

## VIII. PRAYER AND CONCLUSION

RCI and LTI ask the Court to find that Hartford breached its contract with LTI and RCI. RCI and LTI seek recovery of damages they incurred in connection with Joseph Kippes's theft. RCI and LTI pray for costs, attorneys fees, damages, interest, and for all other relief to which they may be entitled in law or in equity.

Respectfully submitted,

MALONEY, MARTIN & MITCHELL, LLP

By:_____/s/ Michael J. Maloney_____.
Michael John Maloney
Texas Bar No. 12883550
3401 Allen Pkwy, Suite 100
Houston, Texas 77019
TELEPHONE   713.759.1600
FACSIMILE   713.759.6930
E-MAIL        mmaloney@maloneymartinllp.com

Of Counsel:

THE AXELRAD LAW FIRM, PLLC
Jonathan Axelrad
Texas Bar No. 00796146
3401 Allen Parkway, Suite 100
Houston, Texas 77019
TELEPHONE   713.759.1600
FACSIMILE   713.759.6930
E-MAIL        ja@jaallp.com

ATTORNEYS FOR PLAINTIFFS,
ROWAN COMPANIES, INC. AND
LeTOURNEAU TECHNOLOGIES, INC.

Filed 09 August 28 P2:58
Loren Jackson - District Clerk
Harris County
ED101J015498611
By:Prusilla Brantley

# Crime*SHIELD* Policy
## for Mercantile Entities

**Co Code**

☐ 1  Hartford Fire Insurance Company
      Hartford, CT 06115

☐ 3  Hartford Casualty Insurance Company
      Hartford, CT 06115

☐ ___

☐ F  Hartford Insurance Company of Illinois
      Naperville, IL 60566

☐ G  Hartford Insurance Company of the Midwest
      Indianapolis, IN 46204

☐ J  Hartford Insurance Company of the Southeast
      Maitland, FL 32751

The Company is shown above by Co. Code  **☐ 3**          **POLICY NUMBER**  83BDDDK4609

Coverage under this Policy affords recovery for losses discovered during the Policy Period or during the Extended Period to Discover Loss. In return for the payment of the premium, and subject to all the terms of this Policy, we agree with you to provide the insurance stated in this Policy.

## DECLARATIONS

**ITEM**

1. **Named Insured:**  Rowan Companies, Inc. and Schedule A

2. **Mailing Address:**  2800 Post Oak Boulevard
                          Suite 5450
                          Houston, TX 77056

3. **Policy Period:**  from May 19, 2005 _____ until cancelled.
                       (12:01 A.M. Standard Time at Your Mailing Address)

4. **Coverages, Limits of Insurance and Deductibles:**
   Insuring Agreements, Limit of Insurance and Deductible Amounts shown below are subject to all of the terms of this policy that apply.

| Insuring Agreements Forming Part of This Policy | Limit of Insurance | Deductible Amount |
|---|---|---|
| 1.  Employee Theft | $ 2,500,000 | $ 250,000 |
| 2.  Depositors Forgery or Alteration | $ 2,500,000 | $ 250,000 |
| 3.  Theft, Disappearance and Destruction - *Money, Securities and Other Property* | $ 2,500,000 | $ 250,000 |
| 4.  Robbery and Safe Burglary — *Money and Securities* | $ 0 | $ 0 |
| 5.  Computer and Funds Transfer Fraud | $ 2,500,000 | $ 250,000 |

5. **Form Numbers of Endorsements Forming Part of This Policy When Issued:**
   CLAIM-03, F-4207-0, F-4237-0, F-4275-0, F-4312-0, F-4326-0, F-5011-0, Endorsement 42B

6. **Cancellation of Prior Insurance:** By acceptance of this Policy you give us notice cancelling prior policies or bonds numbered; _____ the cancellations to be effective at the time this policy becomes effective.

This Policy has been signed by the Company's President and Secretary, but it shall not be binding unless it is countersigned by its authorized representative.

*Michael S. Wilder*, *Secretary*

Countersigned by: _____

*Ramani Ayer*, *President & COO*

_____, *Authorized Representative*

**EXHIBIT A**

Form F-4201-0 TX

© 1999, The Hartford

Certified Document Number: 43178043 - Page 1 of 16

2009-55524 / Court: 129

Throughout this Policy the words "you" and "your" refer to the named Insured in the Declarations. The words "we", "us", and "our" refer to the Company providing this Insurance. Other words and phrases that appear in quotation marks have a special meaning. Refer to Section V., Exclusions; Section VI., General Conditions; and Section VII., Definitions, to determine where this Policy restricts coverage.

## I. CONSIDERATION CLAUSE

In exchange for the payment of premium and subject to the Declarations, Insuring Agreements, Exclusions, General Conditions, Definitions and terms of this Policy, we will pay for loss which you sustain resulting directly from acts committed or events occurring at any time and discovered by you during the Policy Period shown in the Declarations or during the period of time provided in General Condition L., EXTENDED PERIOD TO DISCOVER LOSS.

## II. INSURING AGREEMENTS

Coverage is provided under the following Insuring Agreements if either an amount is stated in the Insuring Agreement or for which there is a Limit of Liability shown in the Declarations.

### A. INSURING AGREEMENT 1. - EMPLOYEE THEFT

We will pay for loss of or damage to "money", "securities" and "other property" which results directly from "theft" by an "employee", whether or not identifiable, while acting alone or in collusion with other persons.

### B. INSURING AGREEMENT 2. - DEPOSITORS FORGERY OR ALTERATION

1. We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are
   a.  made or drawn upon you; or
   b.  made or drawn by one acting as your agent and drawn on your account
   or that are purported to have been so made or drawn.
2. We will treat mechanically reproduced signatures the same as handwritten signatures.
3. If you are sued for refusing to pay any instrument in B.1. above, on the basis that it has been forged or altered and you have our written consent to defend against that suit, we will pay for any reasonable legal expenses that you incur and pay in such defense. The amount that we will pay is in addition to the Limit of Liability applicable to this Insuring Agreement. If a Deductible Amount applies to this Insuring Agreement, we will also apply it to the amount of legal expenses incurred in this Insuring Agreement.
4. You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss and describing both sides of said instrument.
5. This Insuring Agreement covers loss you sustain anywhere in the world; the Territory General Condition does not apply.

### C. INSURING AGREEMENT 3. - THEFT, DISAPPEARANCE AND DESTRUCTION - MONEY, SECURITIES AND OTHER PROPERTY

1. INSIDE THE PREMISES

   a.  We will pay for loss of "money" and "securities" inside the "premises" or "banking premises" resulting directly from "theft", disappearance or destruction.
   b.  We will pay for loss of or damage to "other property"
       (1)  inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or
       (2)  inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

© 1999, The Hartford

Certified Document Number: 43178043 - Page 2 of 16

c.  We will pay for loss from damage to the "premises" o, its exterior resulting from an actual or attempted
    (1)  "theft" of "money" or "securities"; or
    (2)  . "robbery" or "safe burglary" of "other property"
    if you are the owner of the "premises" or are liable for damage to it.
d.  We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" or unlawful entry into those containers.

### 2. OUTSIDE THE PREMISES

We will pay for

a.  loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction; or
b.  loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

## D. INSURING AGREEMENT 4. - ROBBERY AND SAFE BURGLARY - MONEY AND SECURITIES

### 1. INSIDE THE PREMISES

We will pay for loss of or damage to "money" and "securities"

a.  resulting directly from an actual or attempted "robbery" of a "custodian" inside the "premises"; or
b.  resulting directly from an actual or an attempted "safe burglary" occurring inside the "premises" or inside a "banking premises".

### 2. OUTSIDE THE PREMISES

We will pay for loss of or damage to "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

## E. INSURING AGREEMENT 5. - COMPUTER AND FUNDS TRANSFER FRAUD

We will pay for loss of and loss from damage to "money", "securities" and "other property" following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises"
1.  to a person (other than a "messenger") outside those "premises"; or
2.  to a place outside those "premises".
And, we will pay for loss of "money" or "securities" through "funds transfer fraud" resulting directly from "fraudulent transfer instructions" communicated to a "financial institution" and instructing such institution to pay, deliver, or transfer "money" or "securities" from your "transfer account".

## F. INSURING AGREEMENT 6. - MONEY ORDERS AND COUNTERFEIT CURRENCY

1.  We will pay for loss resulting directly from your having in good faith, in exchange for merchandise, "money" or services accepted
    a.  money orders issued by any post office, express company or bank in the United States of America or Canada that are not paid upon presentation; and
    b.  "counterfeit" United States of America or Canadian Paper currency
    that is acquired during the regular course of business. The Limit of Insurance under this Insuring agreement is $50,000. and there is no deductible applying to loss covered under this agreement.
2.  You must notify the police if you have reason to believe that you have accepted a "counterfeit" money order or "counterfeit" paper currency.

© 1999, The Hartford

Certified Document Number: 43178043 - Page 3 of 16

III.   **LIMIT OF INSURANCE**

The most that we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the Declarations.

IV.   **DEDUCTIBLE**

We will not pay for loss in any one "occurrence" unless the amount of the loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance. In the event that more than one Deductible Amount could apply to the same loss, only the highest Deductible Amount will be applied.

You must give us notice as soon as possible of any loss of the type insured under the Policy if, in your best estimation, such loss will, or will appear to exceed 25% of the current Deductible Amount for the Insuring Agreement under which the loss has occurred.

V.   **EXCLUSIONS** *(Applying To All Insuring Agreements Unless Otherwise Specified)*

This Policy Does Not Apply To And We Will Not Pay For:

A.   **Accounting or Arithmetical Errors or Omissions**
Loss resulting from accounting or arithmetical errors or omissions.

B.   **Acts Committed By You**
Loss resulting from "theft" or any other dishonest or criminal acts committed by you whether acting alone or in collusion with others.

C.   **Acts of Employees, Managers, Directors, Trustees or Representatives**
Loss resulting from "theft" or any other dishonest or criminal act committed by any of your "employees", managers, directors, trustees or representatives whether acting alone or in collusion with other persons or while performing services for you or otherwise except when covered under Insuring Agreement 1.

D.   **Employee Cancelled Under Prior Insurance**
Loss caused by any "employee" of yours or predecessor in interest of yours, for whom similar prior insurance has been cancelled and not reinstated since the last cancellation.

E.   **Exchanges or Purchases**
Loss resulting from the giving or surrendering of property in any exchange or purchase.

F.   **Fire**
Loss from damage to the premises resulting from fire, however caused, except for loss of or damage to "money" or "securities" and loss from damage to a safe or vault under Insuring Agreement 3. and 4.

G.   **Governmental Action**
Loss resulting from seizure or destruction of property by order of governmental authority.

H.   **Indirect Loss**
Loss that is an indirect result of any act or "occurrence" covered by this Policy including but not limited to loss resulting from
1.   your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".
2.   payment or damages of any type for which you are legally liable. But we will pay compensatory damages arising directly from a loss covered under this policy.
3.   payment of costs, fees or other expenses you incur in establishing either the existence of or the amount of loss under this policy.

I.   **Inventory Shortages**
Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon
1.   an inventory computation; or
2.   a profit and loss computation.
However, where you establish wholly apart from such inventory computations that you have sustained a loss covered under this Policy, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

J.   **Legal Expenses**
Expenses related to any legal action except when covered under Insuring Agreement 2.

K.   **Money Operated Devices**
Loss of property contained in any money operated device unless the amount of any "money" deposited in it is recorded by a continuous recording instrument in the device.

**Form F-4201-0 TX**                                                    **Page 4 of 12**

© 1999, The Hartford

Certified Document Number: 43178043 - Page 4 of 16

**L.**    **Motor Vehicles or Equipment And Accessories**
Loss of or damage to motor vehicles, trailers, or semi-trailers or equipment or accessories attached to them.

**M.**    **Nuclear**
Loss resulting from nuclear reaction, nuclear radiation, or radioactive contamination, or any related act or incident.

**N.**    **Risks Inherent In Insurance Operations**
Loss resulting directly or indirectly from contractual or extra contractual liability sustained by you in connection with the issuance of contracts or purported contracts of insurance, indemnity or suretyship.

**O.**    **Trading Losses**
Loss resulting directly or indirectly from trading, whether in your name or in a genuine or fictitious account.

**P.**    **Transfer or Surrender of Property**
Loss of or damage to property of any kind after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises"
1.   on the basis of unauthorized instructions; or
2.   as a result of a threat to do bodily harm to any person; or
3.   as a result of a threat to do damage to any property.
But this Exclusion does not apply under Insuring Agreement 3. or 4. to loss of "money", "securities" and "other property" while outside the "premises" or "banking premises" in the care and custody of a "messenger" if you:
1.   had no knowledge of any threat at the time that the conveyance began; or
2.   had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**Q.**    **Vandalism**
Loss from damages to the "premises" or to the exterior of any safe, vault, cash box, cash drawer or, cash register by vandalism or mischief.

**R.**    **Voluntary Parting of Title To or Possession of Property**
Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**S.**    **War and Similar Actions**
Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion, or revolution, or any related act or incident.

**T.**    **Warehouse Receipts Losses**
Loss resulting from fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

## VI.    GENERAL CONDITIONS

**A.**    **ARMORED MOTOR VEHICLE COMPANIES**
Under Insuring Agreements 3. and 4. we will pay only for the amount of loss you cannot recover
1.   under your contract with the armored motor vehicle company; and
2.   from any insurance or indemnity carried by or for the benefit of customers of the armored motor vehicle company, or from the armored motor vehicle company.

**B.**    **CALCULATION OF PREMIUM**
The premium charged for this Policy was computed based on rates in effect at the time the Policy was issued. On each renewal, continuation, or anniversary of the effective date of this Policy, we will compute the premium in accordance with our rates and rules then in effect.

**C.**    **CANCELLATION OR NONRENEWAL OF POLICY**
   **1.**    **CANCELLATION**
     a.   The first named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.
     b.   We may cancel this policy by mailing or delivering to the first named Insured written notice of cancellation at least:
       (1)   10 days before the effective date of cancellation if we cancel for non-payment of premium; or
       (2)   90 days before the effective date of cancellation if we cancel for any other reason.
     c.   We will mail or deliver our notice to the first named Insured's last mailing address known to us.

**Form F-4201-0 TX**                                                    **Page 5 of 12**

© 1999, The Hartford

       d.    Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

       e.    If this policy is cancelled, we will send the first named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

       f.    If notice is mailed, proof of mailing will be sufficient proof of notice.

**2.   NONRENEWAL**
       a.    We may elect not to renew this Policy at each annual anniversary date.

       b.    If we decide not to renew this policy, we will mail or deliver written notice to the first named Insured shown in the Declarations, at the address shown in this Policy, at least 90 days before the annual anniversary date.

       c.    If notice is mailed, proof of mailing will be sufficient proof of notice.

**D.   CANCELLATION AS TO ANY EMPLOYEE**
Insuring Agreement 1. is cancelled as to any "employee"

1.   immediately upon discovery by you or any of your partners, members, managers, officers, directors or trustees not in collusion with the "employee" of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you; or

2.   on the date specified in a notice mailed to you. The date will be at least 30 days after the date of the mailing. And, the mailing of notice to you at the last mailing address known to us will be sufficient proof of notice. Delivery of notice is the same as mailing.

**E.   CHANGES**
This Policy contains all of the agreements between you and us concerning the insurance afforded. The first named Insured shown in the Declarations is authorized to make changes in the terms of this Policy with our consent. This Policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

**F.   CONCEALMENT, MISREPRESENTATION OR FRAUD**
This Policy is void in any case of fraud by you as it relates to this Policy at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning

1.   this Policy;

2.   the property covered under this Policy;

3.   your interest in the property covered under this Policy; or

4.   a claim under this Policy.

**G.   CONSOLIDATION OR MERGER**
If through consolidation or merger with, or purchase or acquisition of assets or liabilities of, some other entity, any additional persons become "employees" or you acquire the use and control of any additional "premises"

1.   you must give us written notice and obtain our written consent to extend this insurance to such additional "employees" or "premises". We may condition our consent upon payment of an additional premium; but there shall only be a premium charge if such merger or acquisition results in a 15%, or greater, increase in the number of "employees", assets or revenues acquired through the merger or acquisition.

2.   For the first 60 days after the effective date of such consolidation, merger, acquisition of assets or liabilities, any insurance afforded for "employees" or "premises" also applies to these additional "employees" or "premises" for acts committed within this 60 day period.

**H.   DISCOVERY**
1.   We will pay for loss which you sustain through acts or events committed or occurring at any time and which are discovered by you during the Policy Period or during the period provided in General Condition L., EXTENDED PERIOD TO DISCOVER LOSS.

2.   Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this Policy has been, or may be incurred even though the exact amount or the details of the loss may not then be known.

3.   Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts, which if true, would constitute a covered loss under this policy.

Form F-4201-0 TX

© 1999, The Hartford

Certified Document Number: 43170043 - Page 6 of 16

**I.  DUTIES IN THE EVENT OF LOSS**

After you discover a loss or a situation which may result in a loss of, or damage to, "money", "securities" or "other property", you must

1.  notify us as soon as possible but no later than 60 days after discovery of loss.
2.  submit to examination under oath at our request and give us a signed statement of your answers.
3.  give us a detailed, sworn proof of loss within 120 days.
4.  cooperate with us in the investigation and settlement of any claim.
5.  notify the police if you have reason to believe that your loss involves a violation of law.

**J.  EMPLOYEE BENEFIT PLANS**

1.  If any one or more "employee benefit Plans" are insured jointly with any other entity under this Policy, you or the plan administrator must select a Limit of Insurance for Insuring Agreement 1. that is sufficient to provide a Limit of Insurance for each Plan which is at least equal to that required if each Plan were separately insured.
2.  If the first named Insured is an entity other than a Plan, any payments we make to the Insured for loss sustained by any Plan will be held by that Insured for the use and benefit of the Plan(s) sustaining the loss.
3.  If two or more Plans are insured under this Policy, any payment which we make for loss sustained by two or more Plans, or of commingled "funds" or "other property" of two or more Plans, which arises out of one "occurrence", is to be shared by each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total of those limits.
4.  This Policy insures those Plans which are named as additional Insureds in the Declarations or on any attached Schedule for loss through fraud or dishonesty as defined in Section 2580.412-9 of the Employee Retirement Income Security Act (ERISA) as amended.  For any Plans not specifically named as Insureds, this Policy is deemed to be in compliance with, and satisfy the bonding requirements of Section 2580.312-11 of the act.  This Insurance provides a Limit of Insurance which is equal to 10% of the amount of the funds handled or $500,000., whichever is less, for each Plan bonded and the minimum Limit of Insurance for any Plan shall be $1,000. The Limit of Insurance available for any Plan loss will be determined by the amount of funds handled on the date when any covered loss occurs subject to the foregoing limitations.
5.  The Deductible provision which applies to the Employee Theft Insuring Agreement shall not apply to loss which is sustained by any Plan subject to ERISA and which Plan is covered under this Insurance.

**K.  EXAMINATION OF YOUR BOOKS AND RECORDS**

1.  We may examine and audit your books and records as they relate to this Policy at any time during the Policy Period and up to three years afterward.
2.  We may also examine and audit the books and records of any organization which you newly acquire and that is deemed to be a named Insured under this Policy.

**L.  EXTENDED PERIOD TO DISCOVER LOSS**

We will pay for loss which you sustained prior to the effective date of termination or cancellation of this Insurance, which is discovered by you

1.  no later than 60 days from the date of the termination, cancellation or non-renewal; and
2.  as respects any "employee benefit Plan(s)", no later than 1 year from the date of that termination, cancellation or non-renewal.

**M.  FACSIMILE SIGNATURES**

We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

**N.  INSPECTION AND SURVEYS**

1.  We have the right but are not obligated to
    a.   make inspections and surveys at any time;
    b.   give you reports on the conditions we find; and
    c.   recommend changes.
2.  Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or the safety of workers or the

© 1999, The Hartford

Certified Document Number: 43178043 - Page 7 of 16

public. And, we do not warrant that conditions
    a.    are safe or healthful; or
    b.    comply with laws, regulations, codes or standards.
3.    This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**O.    JOINT INSURED**

1.    If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes of this Policy. If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.
2.    If any Insured, partner, member or officer of an Insured has knowledge of any information relevant to this Policy, that knowledge is considered to be knowledge of every Insured.
3.    An "employee" of any Insured is considered to be an "employee" of every Insured.
4.    If this Policy or any of its Insuring Agreements is cancelled, terminated or non-renewed as to any Insured, loss sustained by that Insured is covered only if discovered by you during the period of time provided in General Condition L, EXTENDED PERIOD TO DISCOVER LOSS. And, this extended period to discover loss also terminates in accordance with paragraph 2 of that condition.
5.    We will not pay a greater amount for loss sustained by more than one Insured than we would pay if all of the loss had been sustained by one Insured.

**P.    LEGAL ACTION AGAINST US**

You may not bring any legal action against us involving loss
1.    unless you have complied with all the terms of this Policy; and
2.    until 90 days after you have filed proof of loss with us; and
3.    unless such action is brought within 2 years from the date that you discover such loss.

**Q.    LIBERALIZATION**

If we adopt any revision that would broaden the coverage within the Policy without additional premium within 45 days prior to or during the Policy Period, the broadened coverage will immediately apply to this Policy.

**R.    LOSS COVERED UNDER MORE THAN ONE INSURING AGREEMENT OF THIS POLICY**

If two or more Insuring Agreements of this Policy apply to the same loss, we will pay the lesser of
1.    the actual amount of loss; or
2.    the sum of the Limits of Insurance applicable to those Insuring Agreements.

**S.    NON ACCUMULATION OF LIMIT OF INSURANCE**

Regardless of the number of years this Policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or Policy Period to Policy Period.

**T.    OTHER INSURANCE**

1.    This policy does not apply to loss recoverable or recovered under other insurance or indemnity. If the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this Policy will apply to that part of the loss, other than that falling within any Deductible Amount, not recoverable or recovered under the other insurance or indemnity.
2.    However, this Policy will not apply to the amount of loss that is more than the applicable Limit of Insurance shown in the Declarations.

**U.    OWNERSHIP OF PROPERTY; INTERESTS COVERED**

1.    The property covered under this Policy is limited to property
    a.    that you own, lease or client property which you hold on your "premises" or which is in the custody of one acting as your "messenger" and while such property is in transit; or
    b.    for which you are legally liable excepting loss of client property occurring on such client's premises.
2.    However, this Policy is for your benefit alone and no other person or organization has any rights or benefits. However, any claim for a loss of client property occurring on your "premises" or while in transit in the custody of a "messenger" may only be made by you in your proof of loss.

© 1999, The Hartford

Certified Document Number: 43178043 - Page 8 of 16

10/12/2009 12:21 FAX  8605472092          BOND CLAIM                                    ☑017/026

**V. PREMIUMS**

The first named Insured is responsible for the payment of all premiums and will be the payee for all return premiums we pay. .

**W. RECORDS**

You must keep records of all property covered under this policy so we can verify the amount of any loss.

**X. RECOVERIES**

1. Any recoveries, less the cost of obtaining them, made after the settlement of loss covered by this Policy will be distributed
   a. to you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;
   b. then to us, until we are reimbursed for the settlement made; and
   c. then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.
2. Recoveries do not include any recovery
   a. from insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or
   b. of original "securities" after duplicates of them have been issued.

**Y. SPECIAL LIMIT OF INSURANCE FOR SPECIFIED PROPERTY (Insuring Agreement 3.)**

We will pay no more than $5,000. for any one "occurrence" of loss of or damage to
1. precious metals, precious or semi-precious stones, pearls, furs or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or
2. manuscripts, drawings or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

**Z. TERRITORY**

This Policy covers acts committed or events occurring within the United States of America, U.S. Virgin Islands, Puerto Rico or Canada. However, we will pay for loss under Insuring Agreement 1. which is caused by an "employee" while temporarily outside of the territories named in this General Condition for a period of not more than 90 consecutive days.

**AA. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

1. Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual named Insured.
2. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**BB. TRANSFER OF YOUR RIGHTS OF RECOVERY AGAINST OTHERS TO US**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**CC. VALUATION**

1. Subject to the applicable Limit of Insurance, we will pay for
   a. loss of "money" but only up to and including its face value. We may, at our option, pay for a loss of "money" issued by any country other than the United States of America in either the face value in the "money" issued in that country, or, in the United States of America dollar equivalent determined by the rate of exchange on the day that the loss occurred.
   b. loss of "securities" but only up to and including their value at the close of business on the day that the loss was discovered. But, we may, at our option, 1) pay the value of such "securities", 2) replace them in kind in which event you must assign to us all your rights, title and interest in and to those "securities" or 3) pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond ·

Form F-4201-0 TX                                                              Page 9 of 12

© 1999, The Hartford

having a penalty not exceeding the lesser of

    (1)    the value of the "securities" at the close of the business on the day the loss was discovered; or

    (2)    the Limit of Insurance.

c.    loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation, subject to 2. below. However, we will not pay for more than the lesser of

    (1)    the Limit of Insurance applicable to the lost or damaged property; or

    (2)    the cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or

    (3)    the amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If we can not agree with you upon the cost of replacement, the cost will be determined by arbitration.

2.    We will not pay on a replacement cost basis for any loss or damage

    a.    until the lost or damaged property is actually repaired or replaced; and

    b.    unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay based on actual cash value.

3.    We may, at our option, pay for loss of or damage to property other than "money" in the "money" of the country in which the loss occurred; or in the United States of America dollar equivalent of the "money" of the country where the loss occurred determined by the rate of exchange on the day the loss was discovered. Any property that we pay for or replace becomes our property.

4.    Loss of or loss from damage to any books or records of account or other records, tapes, disks, or electronic media used by you in the business but only if

    a.    such books, records, tapes or disks are actually reproduced and then only for not more than the blank books, pages, tapes and disks or other materials plus the cost of labor for the actual transcription or copying of data which you shall furnish to reproduce such books, records, tapes or disks.

## VII   DEFINITIONS

A.    *"Banking premises"* means the interior portion of that part of any building occupied by a banking institution or similar safe depository.

B.    *"Counterfeit"* means an imitation of an actual valid original which is intended to deceive and to be taken as an original.

C.    *"Custodian"* means you, or any of your partners, or members or any "employee" while having the care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

D.    *"Employee"* means

    1.    any natural person

        a.    while in your service or for 60 days after termination of service; and

        b.    whom you compensate directly by salary, wages, commissions; and

        c.    whom you have the right to direct and control while performing services for you; including one

        d.    who is performing services for you as the chairman, or a member of any committee and whether compensated or not; or

        e.    who is a director or trustee while acting as a member of any of your elected or appointed committees to perform on your behalf, specific, as distinguished from general directorial acts; or

        f.    who is a non-compensated officer; or

        g.    who is a volunteer who is not compensated, other than one who is a fund solicitor, while performing services for you that are usual to the duties of an "employee"; or

        h.    who is a former employee, director, partner, member, representative or trustee retained as a consultant while performing services for you; or

        i.    who is a student intern or guest student pursuing studies or duties in any of your offices or "premises"; and

© 1999, The Hartford

Certified Document Number: 43178043 - Page 10 of 16

        J.    who is your partner or member (of limited liability corporations), but we will not pay for loss caused by any partner or member, unless the amount of the loss exceeds the sum of
- (1) any amounts you owe that partner or member; and
- (2) the value of that partner's partnership interest, or that member's ownership interest determined by the closing of your organization's books on the date of discovery of the loss by your organization by anyone not in collusion with the person causing the loss, and
- (3) any applicable Deductible Amount; then

we will pay the amount of loss excess of that sum, up to the Limit of Insurance applicable to Insuring Agreement 1.

2.    a natural person who is a trustee, officer, "employee", administrator or manager, except an administrator or a manager who is an independent contractor, of any "employee benefit Plan(s)" insured under this Policy; and your director or trustee while that person is handling "funds" or "other property" of "employee benefit Plan(s)" insured under this Policy.

3.    a natural person who is furnished temporarily to you to substitute for a permanent "employee" to meet seasonal or short term work load conditions and while that temporary person is subject to your direction and control and performing services for you. However, such persons are excluded while having care and custody of property outside the "premises"; and

     a.    "employee" does NOT mean
- (1) any agent, broker, person leased to you by a labor leasing firm, factor, commission merchant, consignee, independent contractor or representative of the same general character; or
- (2) any manager, director, partner, member or trustee except while performing acts coming within the scope of the usual duties of an "employee".

E.    *"Employee benefit Plan(s)"* means any welfare or pension Plan listed in the Declarations, on .an attached schedule or for which automatic coverage is afforded that is subject to the Employee Retirement Income Security Act (ERISA) of 1974, as amended.

F.    *"Financial institution"* means a bank, savings bank, savings and loan association or similar thrift institution, a stockbroker, mutual fund, liquid assets fund, or similar investment institution in which you maintain a "transfer account".

G.    *"Forgery"* means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any reason.

H.    *"Fraudulent transfer instructions"* means

1.    fraudulent electronic, telegraphic, facsimile, cable, teletype or telephone instructions to a "financial institution" to debit a "transfer account" and to pay, transfer or deliver "money" or "securities" from such account and which instructions purport to have been authorized by you but which have been fraudulently transmitted by another; or

2.    fraudulent written instructions to a "financial institution" to debit a "transfer account" and to pay, transfer or deliver "money" or "securities" from such account through an electronic funds transfer system at specified times or under specified conditions and which instructions purport to have been duly authorized by you but which have been fraudulently issued, forged or altered by another.

I.    *"Funds transfer fraud"* means "theft" of "money" or "securities" from any of your "transfer accounts" at a "financial institution" and occurring through "fraudulent transfer instructions" communicated to such "financial institution".

J.    *"Messenger"* means you, any of your partners or members or any "employee" while having care and custody of property outside the "premises".

K.    *"Money"* means currency, coins and bank notes in current use and having a face value; and travelers checks, register checks and money orders held for sale to the general public.

L.    *"Occurrence"* means

1.    as respects the Employee Theft Insuring Agreement, all loss caused by, or involving, one or more "employees", whether the result of a single act or a series of acts.

2.    as respects the Forgery or Alteration Insuring Agreement, all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.

3.    as respects all other Insuring Agreements, an act or series of related acts involving one or more persons; or an act or event or a series of related acts or events not involving any person.

© 1999, The Hartford

Certified Document Number: 43178043 - Page 11 of 16

10/12/2009 12:22 FAX  8605472092        BOND.CLAIM                        ☑020/026

M.   *Other Property* or property means any tangible property other than "money" or "securities" that has
     intrinsic value but does not include any property excluded under this Policy.  "Other property" does not
     include trade secrets, proprietary information, confidential information or any copyrights, patents,
     trademarks, proprietary manufacturing or processing procedures, or secret or confidential information,
     including but not limited to credit card numbers, bank account numbers or any similar information.

N.   *Premises* means the interior of that portion of any building which you occupy in conducting your
     business.

O.   *Robbery* means the unlawful taking of property from the care and custody of a person by one who
     has caused or threatened to cause that person bodily harm, or, committed an obviously unlawful act
     witnessed by that person.

P.   *Safe burglary* means the unlawful taking of property from within a locked safe or vault by a person
     unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior, or, the
     taking of a safe or vault from inside the "premises".

Q.   *Securities* means negotiable or non-negotiable instruments or contracts representing either "money"
     or property and includes tokens, tickets, revenue and other stamps (whether represented by actual
     stamps or unused value in a meter) in current use; and, evidences of debt issued in connection with
     credit or charge cards, which cards are not issued by you; but does not include "money".

R.   *Theft* means the unlawful taking of "money", "securities" or "other property" to the deprivation of the
     insured.

S.   *Transfer account* means an account maintained by you at a "financial institution" from which you or
     your authorized representative may cause the payment, transfer or delivery of "money" or "securities"
     by any means described in the "fraudulent transfer instructions" definition.

T.   *Watchperson* means any person whom you retain specifically to have the care and custody of
     property inside the "premises" and who has no other duties.

POLICY NUMBER:   83BDDDK4609

EFFECTIVE DATE:   May 19, 2005

NAMED INSURED:   Rowan Companies, Inc. and Schedule A

The Hartford 

## SCHEDULE A

Rowan International, Inc.

RDC Perfuracoes Maritimas Do Brasil, Ltda.

Universal Aviation & Marine Risks, Ltd.

Aberuchill Ltd.

Rowan International, (Gabon) Inc.

Rowan North Sea Limited

Rowan Drilling & Aviation (Netherlands) B.V.

RDC Marine, Inc.

Rowandrill, Inc.

Munger-Moore & Associates, INc.

Rowan Drilling (U.K.) Limited

Atlantic Maritime Services, Inc.

Rowan Canada, Limited

Rowan Aviation & Marine, Ltd.

N.Z.D. Noordzee Drill, B.V.

Arctic Slope Drilling Company

Rowan Petroleum, Inc.

Rowan Drilling Company, Inc.

Oilfield Electric Marine, Inc.

Rowan Energy Investments, Inc.

Rowan Marine Services, Inc.

Rowan Marine Drilling, Inc.

Perforadora Guerrero Negro, S.A. de C.V.

Rowan North Sea Investments, Inc.

British American Offshore Limited

Rowan Pension Plan

The Group Life and Health Insurance Plan of Rowan Companies, Inc.

Retirement Savings Plan for Employees of Rowan Canada, Ltd.

Page 1 of 2

**POLICY NUMBER:**    83BDDDK4809

**NAMED INSURED:**    Rowan Companies, Inc. and Schedule A

## SCHEDULE A – Page 2

The Money Accumulation Pension Plan for Foreign National Employees of Rowan Companies, Inc.

Rowan Drilling (U.K.) Ltd. Pension Scheme

Rowan Drilling (U.K.) Life Insurance Plan

The Employee Stock Purchase Plan of Rowan Companies, Inc.

Rowan Companies, Inc. Savings and Investment Plan

LeTourneau, Inc.

LeTourneau Sales & Service Company

LeTourneau Ellis Williams Company, Inc.

LeTourneau Australia Pty. Ltd.

LeTourneau, Inc. Savings and Investment Plan

LeTourneau, Inc. Group Life and Health Plan

LeTourneau, Inc. Retirement Income Plan

LeTourneau, Inc. Weekly Accident & Sickness Benefit Plan

LeTourneau, Inc. Long Term Disability Plan

10/12/2009 12:23 FAX  8605472092          BOND.CLAIM                           ☑023/026



# THE HARTFORD

## Claims Inquiries Notice

Hartford Fire Insurance Company            Twin City Insurance Company
Hartford Casualty Insurance Company        Hartford Insurance Company of Illinois
Hartford Accident and Indemnity Company    Hartford Insurance Company of the Midwest
Hartford Underwriters Insurance Company    Hartford Insurance Company of the Southwest

Please address inquiries regarding Claims for all surety and fidelity products issued by The Hartford's underwriting companies to the following:

Phone Number:    :    888-266-3488
Fax – Claims     :    860-757-5835 or 860-547-8265
E-mail           :    bond.claims@thehartford.com

Mailing Address  :    The Hartford
                      BOND, T-4
                      690 Asylum Avenue
                      Hartford, CT 06115

Claims Inquiries Notice 2003

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMEND TERRITORIAL LIMITS

This endorsement applies only to the Insuring Agreements designated in the Schedule.

### A. SCHEDULE

| INSURING AGREEMENT | ADD | DELETE |
|---|---|---|
| 1,2,3,4 | Any where in the world | |

### B. PROVISIONS:

The **TERRITORY** General Condition is amended for any Insuring Agreement shown in the **SCHEDULE** by adding or deleting the territory shown in the **SCHEDULE**.

Form F-4207-0                                                                    Page 1 of 1

© 1998, The Hartford
Includes copyrighted material of Insurance Services Office, Inc. with its permission
©copyright, Insurance Services Office, Inc., 1984

Certified Document Number: 43178043 - Page 16 of 16